CHAPMAN MOTORS, INC., Appellant,

v.

J. C. TAYLOR et al., Appellees.

No. 5319.

Court of Civil Appeals of Texas,
Waco.

Feb. 28, 1974.

Rehearing Denied March 14, 1974.

Jerry W. Biesel, Dallas, for appellant.

Paul E. Lokey & Co., Dallas, for appellees.

OPINION

JAMES, Justice.

This is a suit over the title and possession of an automobile. After a trial before the court without a jury, the trial court entered judgment that Plaintiff-Appellant Chapman Motors, Inc. take nothing. We reverse and render.

The automobile in dispute is a 1968 Cadillac El Dorado, identification number H8240525. This car is hereinafter referred to as "the Cadillac." Plaintiff-Appellant Chapman Motors, Inc. is in the business of buying and selling automobiles in Dallas County, Texas. Defendants-Appellees are J. C. Taylor, Individually, and Jay's Compact Motors, Inc. J. C. Taylor is likewise a used car dealer in Dallas County, Texas, who does business in the name of Jay's Compact Motors, Inc.

Prior to January 12, 1973, Plaintiff-Appellant Chapman Motors, Inc. had sold the Cadillac to some individual whose name does not appear from the record, which purchase was financed by Merchants State Bank. The Cadillac was repossessed by Plaintiff-Appellant Chapman Motors, Inc. and when this was done, Plaintiff-Appellant paid off the note to Merchants State Bank and had said Bank to execute the "Release of Lien" form on the original title certificate. After the repossession by Plaintiff-Appellant as above referred to, Plaintiff-Appellant had possession of the Cadillac as well as the original title certificate to same. The title certificate was not in the name of Chapman Motors, Inc. but in the name of a third party as owner, with the name of the purchaser left blank in the assignment so that Chapman Motors, Inc. could insert the name of a subsequent purchaser when Chapman Motors, Inc. sold the automobile. This is what is commonly called an "open title."

On or about January 12, 1973, the Cadillac was sitting on the front line of the Plaintiff-Appellant's car lot, and the title certificate was in the basket on the desk in the private office of Robby Chapman, Secretary-Treasurer of Chapman Motors, Inc. It was customary for original title certificates to be kept in a bank; however, such title certificates were customarily kept in this basket when they first came in, or when a lien had been paid off, or when such title certificates were ready to go to the courthouse.

One David Lawyer was a man who had been to Plaintiff-Appellant's place of business two or three times prior to January 12, 1973, and the personnel of Chapman Motors, Inc. knew him by sight. On the day before January 12, 1973, when the title certificate was in the basket in the private office as aforesaid and the Cadillac was sitting on the car lot, Bobby Dale Gray, the sales manager for Plaintiff-Appellant, had some people in the office and was busy with them. At this time David Lawyer came into the office and asked Gray if he could use the restroom; whereupon Gray told him he was welcome to use it. The restroom was situated so that it was necessary to go through the private office to get to it. The next day, January 12, 1973, it was discovered that the Cadillac had been stolen from the lot, and the title certificate was stolen from the private office. Mr. Gray, the sales manager for Plaintiff-Appellant, inquired of all personnel of Chapman Motors, Inc. and ascertained that none of the personnel had sold or traded the Cadillac, nor had any of them delivered the title certificate to anyone. Mr. Gray testified that as sales manager it was his responsibility to handle the sales of automobiles for Plaintiff-Appellant, and that this Cadillac had not been sold or traded, and that none of the employees had the authority to deliver the title certificate to anyone. Gray then reported the Cadillac as stolen to the Dallas Police Department.

About a week later, on or about January 19, 1973, David Lawyer accompanied by a woman and a child, appeared with the Cadillac and title certificate at Defendant-Ap-

**726**

pellees' place of business. Lawyer told Defendant-Appellee J. C. Taylor that he wanted to trade the Cadillac "even" for two cars, saying he needed one for himself and one for his wife. Taylor showed him two cars, a 1968 Ford and a 1966 Ford. After Lawyer tried out the two cars, Taylor traded the two cars to Lawyer even for the Cadillac, and Lawyer turned the open title certificate over to Taylor. Likewise, Taylor delivered to Lawyer the title certificates to the two Fords.

About the same day Lawyer traded for the two Fords, he (Lawyer) took the 1968 Ford over to Plaintiff-Appellant's lot and told Bobby Dale Gray, the sales manager that he wanted to sell this car. At this time Mr. Gray had no reason to believe that Lawyer had stolen the Cadillac. After driving and trying out the 1968 Ford, Gray bought the 1968 Ford from Lawyer, paying him cash for it.

Meanwhile, back at Defendant-Appellees' car lot, Mr. Taylor sold the Cadillac to a Mr. Buddy Walls of Garland, Texas, for $1900.00 cash.

Then on February 2, 1973, Plaintiff-Appellant Chapman Motors, Inc. filed suit against Defendant-Appellee J. C. Taylor, among other things, for title and possession of the Cadillac and for a temporary restraining order and temporary injunction enjoining the defendant from selling, trading, or otherwise disposing of the Cadillac, during the pendency of the suit. A temporary restraining order to this effect was entered on February 2, 1973, however, at this time, Defendant-Appellee Taylor did not have the Cadillac, it having been previously sold to Walls. However, Taylor bought the Cadillac back from Walls and on February 9, 1973, the Cadillac was back in Defendant's possession, and on said last-named date, the trial court entered a temporary injunction enjoining Defendants-Appellees J. C. Taylor and Jay's Compact Motors, Inc., from selling, trading, or otherwise disposing of the Cadillac during pendency of the suit. The Cadillac was in Defendant-Appellees' possession at the time of trial.

The testimony is undisputed that both the Cadillac and the title certificate were stolen from Plaintiff-Appellant, and that this same Cadillac was sold by David Lawyer to Defendant-Appellee.

 Plaintiff-Appellant asserts the trial court erred in entering a take-nothing judgment against him, since in doing so the trial court must have necessarily impliedly found that the Cadillac was not stolen. In the light of Appellant's argument and authorities, we interpret this contention to mean that the evidence conclusively establishes that the Cadillac was acquired from Appellant by theft. We sustain this contention. The Defendant-Appellee was, according to the uncontradicted evidence, a purchaser of property from one who had acquired possession thereof by theft. A purchaser of property from one who has acquired possession thereof by theft acquires no title thereto. McKinney v. Croan (Tex.Sup.Ct.1945) 144 Tex. 9, 188 S.W.2d 144.

As above stated, Lawyer showed up at Defendant-Appellees' place of business with the Cadillac and a few days (about a week) after the car and title certificate were taken from Plaintiff-Appellant, and sold the Cadillac and transferred the title thereof to Defendant-Appellee.

Our Court of Criminal Appeals has held that the possession and claim of ownership of a recently stolen automobile on the part of the defendant charged with theft is sufficient to sustain a conviction for theft. Marin v. State (Ct.Crim.App.1963) 374 S.W.2d 227; Morgan v. State (Ct.Crim. App.1968) 435 S.W.2d 862. Also see 55 Tex.Jur.2d "Theft" par. 214 at page 482. We state this rule to show the status of the Cadillac as having been acquired by theft from Plaintiff-Appellant, in the light of the facts of the case at bar.

Judgment of the trial court is accordingly reversed and rendered in favor of Plain-

tiff-Appellant Chapman Motors, Inc. for title and possession of the Cadillac in controversy. Costs of the trial court and those incident to appeal are taxed against Defendants-Appellees.

Reversed and rendered.