Delores Duncan MITCHELL et al., Appellants,

v.

Carol WEBB d/b/a Carol Webb Motor Co., Appellee.

No. 18209.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 25, 1979.

Anderson, Anderson & Rodriguez and Carol Campbell, Wichita Falls, for appellants.

Gibson, Darden & Hotchkiss and Tony Hotchkiss, Wichita Falls, for appellee.

## OPINION

MASSEY, Chief Justice.

This is an appeal from a default judgment. The trial court found Webb, appellee and plaintiff below, to have sustained $5,280.00 actual damages by the fault of the Mitchells. Webb's damages, for purposes of the judgment, were trebled by operation of the Texas Deceptive Trade Practice—Consumer Protection Act. Tex.Bus. & Comm. Code Ann. § 17.41 et seq. (Supp.1978). Such act will be hereinafter referred to as the "D.T.P.A.". By the judgment Webb was also granted $1,100.00 as attorney's fees. The Mitchells appealed.

Judgment is reformed, and as reformed is affirmed.

This case involves two pickup trucks. The first pickup was wrecked. A salvage title was issued for it and the title to it was ultimately transferred to the Mitchells, who do business as City Auto Parts in Wichita Falls. What happened to the first pickup after that point is not known. Webb alleged that the Mitchells put the serial number of the wrecked pickup on a second pickup, which had been stolen, and then obtained a forged title for the second pickup based on the serial number of the wrecked vehicle. Further alleged is that the Mitchells participated in title transfers of the second pickup, initially to one Schults, and then in concert with Schults, to Webb, at a purchase price of $4,500.00. Webb, who does business as Carol Webb Motor Company, purchased the truck for purposes of resale. All further references will be to the second pickup truck.

While the truck was on Webb's car lot, it was stolen. It was later located in Colorado. Webb paid out $280.00 in expenses of recovery. Thereafter, Webb sold the truck to Austin Moore for $5,000.00. Afterward Moore learned from law enforcement authorities that the truck was stolen. Moore surrendered the truck and demanded the return of his $5,000.00 purchase price from Webb. Webb paid $5,000.00 to Moore. Then he instituted legal action against the Mitchells. The latter, though served with process, failed to timely answer. At a proper time Webb obtained his judgment by default.

One of the theories upon which Webb based his cause of action was a violation of the D.T.P.A. Webb plead that the Mitchells had acted in a false, misleading and deceptive manner in the conduct of their trade or commerce in representing that they were the owners of the stolen pickup, when in fact they knew they were not. Webb also plead that he had been damaged in the amount of $5,280.00.

At the hearing upon the Mitchells' default the trial court received evidence in connection with the damages Webb alleged in his petition and on attorney's fees. Webb was found to have sustained $5,280.00 in actual damages, which were trebled for purposes of judgment. $1,100.00 attorney's fees were granted as reasonable expenses necessarily incurred in prosecuting the suit.

Within ten days after the default judgment was taken, the Mitchells filed a motion for a new trial. Their motion alleged that failure to answer was not the result of intentional or conscious indifference on their part, that they had a meritorious defense, and that the granting of the motion for the new trial would not delay or otherwise injure Webb.

After a hearing on the motion, the trial court made the specific finding, among others, that the failure of the Mitchells to file an answer was not due to intentional or conscious indifference and was due to an accident or mistake. However, the court denied the Mitchells' motion for a new trial.

Through points of error one through four, the Mitchells argue that the trial court abused its discretion by failing to grant a new trial. In points of error five and six, they challenge the $5,280.00 damage finding on the grounds that there is no evidence and insufficient evidence to support that portion of the judgment. In points of error seven and eight, they challenge the award of attorney's fees on the grounds that there is no evidence and insufficient evidence to support that portion of the judgment. Facts in addition to those already stated

will be supplied as necessary in our discussion.

## I.  ABUSE OF DISCRETION

The law is well settled that there are certain prerequisites which a moving party must meet in order to set aside a default judgment and obtain a new trial. Once these prerequisites are met, it is within the discretion of the trial court to decide whether the facts of the case warrant vacation of the default judgment and the granting of a new trial. *United Beef Producers, Inc. v. Lookingbill*, 532 S.W.2d 958, 959 (Tex.1976). It is apparent that the process directed at having the default judgment set aside and a new trial granted is in the nature of an equitable proceeding. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); 4 McDonald, Texas Trial Practice p. 266 "New Trial" § 18.10.1 (1971) "(Grounds for New Trial)—After Judgment by Default or in Defendant's Absence, Equitable Grounds".

One of the prerequisites to entitlement to a new trial is a showing by the party seeking such relief that he has done everything within his power to conform to the requirements of the law and that he is without further recourse, save for the intervention of equity. The requirements for obtaining a new trial after a default judgment are that the default judgment can be set aside in any case if the failure of the defendant to answer was not intentional nor the result of conscious indifference, but rather was due to an accident or mistake, and if the motion for a new trial sets up a meritorious defense and is filed at a time such that the granting of it will not occasion a delay to nor otherwise injure the plaintiff. *Craddock v. Sunshine Bus Lines, supra* 133 S.W.2d at 126.

In meeting the last requirement of the *Craddock* test the Mitchells failed. At the time a defaulting defendant moves for a new trial, the burden is on him, as movant, to offer to and show that he is ready, willing and able to go to trial immediately and that he is willing to reimburse the plaintiff for all his reasonable costs incurred in obtaining the default judgment. These are elements of the requirement that the granting of the motion for a new trial will not "otherwise injure the plaintiff".

The Mitchells did not offer to reimburse Webb for any costs incurred in obtaining his default judgment until they filed their brief on appeal. This is clearly too late. Such an offer must have been made at the time the Mitchells sought the new trial in the court below. Furthermore, the Mitchells never showed that they were ready, willing or able to go to trial immediately. The transcript shows the trial court specifically so found. Refusal of a new trial was not an abuse of the trial court's discretion.

On the foregoing this court has had occasion to examine in depth the state of the law, briefly stated hereinabove. See *Crabbe v. Hord*, 536 S.W.2d 409, 413, 414 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.) cert. den. 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 776 (1977).

Furthermore, we hold that allegations in the Mitchell's motion failed to present a meritorious defense to Webb's action. Besides technicalities and a complaint that Schults had not been named as a party to the suit, their additional complaint is that "no cause of action was stated" and a "want of privity" existed between Webb and the Mitchells. The last two complaints are part of the matters covered by this opinion and we hold against the Mitchell contention. The first two complaints have no necessary relation to any meritorious defense.

## II.  DAMAGES

The Mitchells complain that Webb failed to plead facts which set forth a cause of action, or alternatively, that even if Webb did plead facts sufficient to constitute an actionable claim, there is "no evidence" or "insufficient evidence" to support the judgment.

Webb's claim for damages can be divided into three parts. The first part of his claim was for $4,500.00. This represented the

sale price paid by Webb for the pickup. It was accepted with a warranty of good title. The second part of Webb's claim is for $500.00, the loss of bargain which Webb incurred when he had to refund the $5,000.00 to Moore. The third part of Webb's claim is for $280.00. This represented the costs which Webb incurred in recovering the pickup after it had been stolen from his car lot.

■ Webb is entitled to recover the $4,500.00 he paid for the pickup on a theory of breach of warranty of title. Under this theory, the Mitchells are liable to Webb even though they are not in privity of contract. Tex.Bus. & Comm.Code Ann. "Sales", § 2.312 (1968), "Warranty of Title and Against Infringement; Buyer's Obligation Against Infringement." This section provides, in part, that "[T]here is in a contract for sale a warranty by the seller that (1) the title conveyed shall be good, and its transfer rightful; and (2) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge."

The Mitchells' character in their transactions was that of a "seller" within the definitions of Tex.Bus. & Comm.Code Ann., "Sales", § 2.103 (1968), "Definitions and Index of Definitions". *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977). *Nobility Homes* involved a breach of the implied warranty of merchantability. In that case it was held that privity of contract was not necessary to sustain recovery for economic loss arising out of breach of such a warranty. In so holding, the court considered whether a remote vendor or transferror in the chain of title was a "seller" and concluded that "seller" did include such remote vendors or transferrors. We conclude that in the instant case the Mitchells would come within the definition of the word "seller".

Concluding as we have that the Mitchells are "sellers" within the meaning of § 2.312, any warranty of title which they made when the pickup was sold to Schults would also run to the benefit of Webb even if by

defaulting there should not have been the concession of the Mitchells' participation. Webb, even if not in privity, would be able to recover from the Mitchells for breach of a warranty of title. Webb's cause of action against the Mitchells for breach of warranty of title was established by pleadings at time of the default judgment. The $4,500.00 in damages was likewise established because that amount constituted liquidated damages.

■ Webb also alleged $500.00 damages arising from his loss of bargain. We hold that this amount is also recoverable. In *Nobility Homes* the Supreme Court noted that damages fall into two categories, physical or mental injuries and economic loss. The Court noted that economic loss has been classified as direct and consequential. Consequential economic loss includes all indirect forms of loss, such as loss of profits resulting from inability to make use of a defective product. 557 S.W.2d 77 at 78. *See also* Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966) (cited by the Texas Supreme Court in footnote I in *Nobility Homes*); and Longley, *Consumer Protection* in 2 State Bar of Texas, Advanced Civil Trial Course at MM–28 (1978). The $500.00 was clearly a loss of profit incurred by Webb. It also arose from Webb's inability to make use of a defective product, specifically, a product with a defective title. Accordingly, the $500.00 lost profit is recoverable as unliquidated damages. That such damages amounted to $500.00 was proved by Webb's evidence at the hearing pursuant to which he obtained the default judgment.

■ However, the $280.00 Webb paid to recover the pickup when it was stolen from him was no part of Webb's cause of action. It does not appear that this is a form of indirect consequential economic loss, such as the loss of profit discussed above, nor does it appear that this is a form of direct loss as described in *Nobility Homes*. The $280.00 cannot be recovered by Webb, and it was error by the trial court to treble it as damages by provisions in the D.T.P.A. and include the resultant $840.00 in the judgment.

Webb's entitlement to treble damages should have been upon the sum of $5,000.00, (the $4,500.00 in liquidated damages and the $500.00 in unliquidated damages), but not upon the additional amount of $280.00 it cost him to recover the pickup truck when, after the transaction with which we are concerned, it was stolen from him. This error may readily be cured by deletion of $840.00 (the $280.00 trebled) from the total award to Webb by the judgment of the trial court.

### III. ATTORNEY'S FEES

Prior to instituting suit material to the above discussion Webb had filed an earlier suit against the Mitchells based upon the same transaction. Discovering that a thirty day demand was wanting as a predicate to the form of recovery desired, Webb dismissed that earlier suit. See § 17.50A of the D.T.P.A., providing that without the prescribed notice before filing suit recovery shall be confined to actual damages only. He then gave notice, and thereafter filed suit anew for treble damages by way of recovery.

The Mitchells complain of the award of attorney's fees of $1,100.00 to Webb. The trial court's award was based on evidence there had been twenty-two hours of work necessarily performed by Webb's attorneys at a rate of $40.00 per hour as a reasonable charge. The Mitchells contend that a part of the twenty-two hours was spent on the prior lawsuit and that as a result the award of $1,100.00 was erroneous. In part the complaint is that some of twenty-two hours had been spent in filing the prior lawsuit, later dismissed. However, there was testimony susceptible to a construction that all the services which went into the computation of the twenty-two hours were performed in connection with instant case, and not upon the prior case which was dismissed.

A second possible objection to the award of attorney's fees could be raised on the ground that since this Court reforms the judgment of the trial court concerning actual damages, the basis on which the attorney's fees were awarded would be improper. That to which we refer is the erroneously awarded $840.00, treble damages based upon actual damages found as Webb's expense of $280.00 to recover the stolen pickup.

The record reflects that the services of Webb's attorneys were not required until some time after the theft, recovery and subsequent sale of the pickup to Moore. It is obvious, therefore, that the attorney's time and services which could have had relation to Webb's claim for costs of recovery of the truck amounted to no more than inserting a paragraph in Webb's original petition making a claim for recovery of such expense. In other words the time would obviously be of little or no consequence, and at most, certainly no more than the time necessary to recite the claim in Webb's pleadings. Time, and value of time, spent by Webb's attorney was the basis for the trial court's award of attorney's fees. That time would be substantially the same whether costs of recovery of the pickup had been claimed or not. Under these circumstances there is no occasion to reverse and remand for trial on the issue on attorney's fees, though the judgment on damages be reduced. *Donnelly v. Young*, 471 S.W.2d 888, 897 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.); *Barnhouse Motors Inc. v. Godfrey*, 577 S.W.2d 378 (Tex.Civ.App.— El Paso 1979, no writ). *See also* Maxwell, *The 1979 Amendments to the Texas Deceptive Trade Practices—Consumer Protection Act* in State Bar of Texas, Texas Consumer Law (1979) at A–11.

Save for complaint relative to the $280.00 as damages, which were trebled for purposes of the judgment, every complaint of the Mitchells is overruled. The judgment of the trial court is reformed so as to delete therefrom the sum of $840.00 ($280.00 trebled). The amount of the judgment in favor of Carol Webb, d/b/a Carol Webb Motor Company and against Delores Duncan Mitchell and Joel L. Mitchell, d/b/a City Auto Parts, jointly and severally, as so reduced, is $15,000.00 ($5,000.00 actual damages trebled) plus $1,100.00 attorney's fees.

The total, $16,100.00, will bear interest at 9% per annum from October 17, 1978 until paid. As so reformed the judgment is affirmed. All costs of the appeal are assessed against the Mitchells.