Randall **PERRY** d/b/a Car Town, Appellant,

v.

Darrell **BRELAND** d/b/a Darrell Breland Motors, State Farm Mutual Automobile Insurance Company, and Gary Sporn, Appellees.

No. 11–99–00197–CV.

Court of Appeals of Texas, Eastland.

April 13, 2000.

Rehearing Overruled May 18, 2000.

Robert E. Reich, Brownwood, for appellant.

Frank R. Stamey, McMahon, Surovik, Suttle, Buhrmann, Hicks & Gill, Matthew E. Ritchie, Asbury & Asbury, Abilene, for appellee.

Panel consists of: WRIGHT, J., and McCALL, J., and DICKENSON, S.J.[*]

OPINION

McCALL, Justice.

In his suit for breach of warranty and fraud, Randall Perry d/b/a Car Town claimed that he was the purchaser of a Suburban from Darrell Breland Motors. Because Breland had transferred the title at Perry's request to Car Town, a car dealership owned by Barry Daniell, the trial court held that Perry lacked standing to sue Breland and dismissed his case. Perry also sued the original owner of the Suburban, Gary Sporn, and Sporn's insurer, State Farm Mutual Automobile Insurance Company (State Farm), for conversion, breach of warranty, and negligence. The trial court granted summary judgment in favor of Sporn and State Farm.

[*] Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sit-

One of the grounds urged by Sporn and State Farm was collateral estoppel based upon a justice of the peace court's finding that State Farm was entitled to ownership of the stolen Suburban. We reverse and remand.

### Background Facts

Sporn, an individual in Austin, advertised for sale his 1989 Suburban that had been driven more than 165,000 miles. Sporn sold his Suburban for $5,500 to Wayne Worley d/b/a T & W Auto Sales in Bronte. Sporn transferred the certificate of title and possession of the Suburban to T & W Auto Sales. Although he swore to the accuracy of the odometer reading, Sporn left the mileage amount blank when transferring the title. Worley said that he would fill in the information and gave Sporn a $5,500 check from T & W Auto Sales. The next day, T & W Auto Sales sold the Suburban to Darrell Breland d/b/a Darrell Breland Motors in Abilene; the title assignment showed an erroneous odometer reading of 67,243 miles. Subsequently, T & W Auto Sales' check to Sporn was returned marked "insufficient funds."

Perry purchased the Suburban from Breland. Perry paid $6,400 for the Suburban with a draft on his business account with Mills County State Bank; the draft was signed by Perry, and he wrote "Car Town" beneath his signature. Vehicle purchases by licensed car dealers are exempt from retail sales tax. Perry did not have a dealer number, but he had been authorized to buy and sell vehicles in the name of Car Town, a licensed dealer. Therefore, Perry had Breland transfer the Suburban's title to Car Town. Perry then sold the Suburban to Bennie Allcorn for $7,500, and Car Town assigned the title to Allcorn. The Texas Department of Transportation issued a title to the Suburban to Allcorn.

ting by assignment.

Shortly thereafter, the Texas Department of Public Safety took possession of the Suburban from Allcorn as a stolen vehicle. Worley was convicted of the theft of the Suburban in a Travis County district court. After Worley's conviction, the Brown County Justice of the Peace Court held a property disposition hearing. State Farm had previously paid Sporn $5,400 under his policy of insurance for the loss resulting from the theft of the Suburban. Allcorn testified at the hearing. The justice of the peace court awarded possession of the vehicle to State Farm based upon a finding that State Farm was the owner of the vehicle. Allcorn informed Perry of the results of the justice of the peace court hearing. Perry reimbursed Allcorn the $7,500 purchase price, and Allcorn endorsed his certificate of title to the Suburban to Perry. Because of the justice of the peace court order, Perry was unable to have title issued to him.

Perry sued Breland, alleging contract, fraud, and deceptive trade practices claims. He joined State Farm and Sporn as defendants, asserting breach of contract, conversion, and negligence claims. The trial court dismissed Perry's suit against Breland for lack of standing and granted summary judgment in favor of Sporn and State Farm.

### Perry's Standing

■ Standing is a component of subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 445–46 (Tex.1993). Therefore, the standard of review for an order of dismissal for lack of standing is the same as that for an order of dismissal for lack of subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board, supra* at 446. Thus, we "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Texas Association of Business v. Texas Air Control Board, supra* at 446, quoting *Huston v. Federal Deposit Insurance Corporation*, 663 S.W.2d 126, 129 (Tex.App.—

Eastland 1983, writ ref'd, n.r.e.). When considering a plea to the jurisdiction, the trial court should look solely at the pleadings and must take all allegations in the pleadings as true. *Washington v. Fort Bend Independent School District*, 892 S.W.2d 156, 159 (Tex.App .—Houston [14th Dist.] 1994, writ den'd); *Huston v. Federal Deposit Insurance Corporation, supra.*

In support of the trial court's order, Breland argues that Perry lacked standing because Daniell owned Car Town and its dealer general distinguishing number (dealer number). Breland acknowledges that Perry was authorized by Daniell to buy vehicles under the Car Town dealer number but contends that Car Town was the only proper plaintiff for two reasons. First, Perry did not have his own dealer number but acted as a dealer in his purchase from Breland; if the sale was to Perry as an individual, it violated TEX. TRANSP. CODE ANN. § 503.021 (Vernon 1999) and was void. Secondly, if he was an agent of Car Town, Perry could not maintain a suit in his own name based upon his principal's contract. We disagree with both propositions.

■ Section 503.021 prohibits any person from engaging in business as a car dealer without a dealer number. When he purchases a vehicle for resale, a licensed dealer does not have to pay retail sales tax. TEX. TAX CODE ANN. § 151.302 (Vernon 1992). By having Breland transfer title to Car Town, Perry avoided paying the retail sales tax on his purchase. The fact that the name of Car Town was on the certificate of title is not conclusive of ownership. Evidence of the name in which an automobile is registered raises only "an administrative presumption" of ownership, and this presumption "vanishes when positive evidence to the contrary is introduced." *Pioneer Mut. Compensation Co. v. Diaz*, 142 Tex. 184, 177 S.W.2d 202, 204 (1944); *Minter v. Joplin*, 535 S.W.2d 737 (Tex.Civ.App.—Amarillo 1976, no writ). Perry's pleadings alleged that he

was the true purchaser of the Suburban, and he introduced evidence at the hearing on standing that he personally furnished the money. Unless Perry as an individual was precluded from having an interest in the Suburban under Section 503.021 because he did not have his own dealer number, Perry has standing to sue Breland.

■ We will assume that Perry was acting as a "dealer" in buying and selling the Suburban.[1] There is no provision in TEX. TRANSP. CODE ANN. ch. 503 (Vernon 1999 & Supp.2000) which states that a transfer to a person acting as a dealer without a dealer number is void, and no Texas case has so held. However, the Certificate of Title Act, TEX. TRANSP. CODE ANN. ch. 501 (Vernon 1999 & Supp.2000), does provide in Section 501.073:

A sale made in violation of this chapter [501] is void and title may not pass until the requirements of this chapter are satisfied.

Despite Section 501.073, the courts have held that, even when the sale of a vehicle does not comply with the Certificate of Title Act, the sale may be considered a valid transaction as between the original parties. *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 24 (Tex.App.—Houston [1st Dist.] 1996, writ den'd); *Pfluger v. Colquitt*, 620 S.W.2d 739, 742 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). The same rule should apply to a violation of the provisions of Chapter 503. Thus, even if Perry had violated Section 503.021 by taking title in his own name, the transaction between Breland and Perry as an individual would not have been void. For purposes of standing, we assume as true Perry's allegation that he was the true owner of the Suburban, not Car Town.

■ Breland's argument that, if Perry was acting as an agent for Car Town, only Car Town as principal can sue, also fails to support a conclusion that Perry lacks standing. There are four exceptions to the rule that an agent may not maintain a suit in his own name based upon his principal's contract: where the agent contracts in his own name; where the principal is undisclosed; where the agent is authorized to act as owner of the property; and where the agent has an interest in the subject matter of the contract. *Wilson County Peanut Company v. Hahn*, 364 S.W.2d 468, 470 (Tex.Civ.App.—San Antonio 1963, no writ). Perry accepted the contract with Breland by giving his own draft drawn on his own bank account; thus, the first exception applied. The second exception also applied. Breland did not discover the owner of Car Town until after this litigation was filed; thus, a fact finder may find that, at the time of the contract, if Perry was acting as an agent, it was for an undisclosed principal. Disclosure of a trade name does not amount to disclosure of a principal. *Posey v. Broughton Farm Company*, 997 S.W.2d 829, 832 (Tex.App.—Eastland 1999, pet'n den'd); *Wynne v. Adcock Pipe and Supply*, 761 S.W.2d 67, 69 (Tex.App.—San Antonio 1988, writ den'd); *A to Z Rental Center v. Burris*, 714 S.W.2d 433 (Tex. App.—Austin 1986, writ ref'd n.r.e.). Disclosure of a principal must be at the time of the contract. *Boyles v. McClure*, 243 S.W. 1080 (Tex. Comm'n App.1922, judgm't adopted); *Posey v. Broughton Farm Company, supra* at 832. An agent contracting for an undisclosed principal has the right to sue if it is apparent that the contract would be enforceable against him if the opposite party sued. See *Moerbe v. Meece*, 630 S.W.2d 278 (Tex. App.—Austin 1981), *aff'd*, *Meece v. Moerbe*, 631 S.W.2d 729 (Tex.1982); *Eppenauer v. Davis*, 272 S.W.2d 934 (Tex.Civ. App.—El Paso 1954, writ ref'd n.r.e.).

Perry's pleadings allege that he furnished the money for the purchase of the Suburban even though the title was con-

---

1. TEX. TRANSP. CODE ANN. § 503.001 (Vernon 1999) defines a dealer as "a person who regularly and actively buys, sells, or ex- changes vehicles at an established and permanent location."

veyed by Breland to Car Town. Breland recognizes that an agent of a disclosed principal may sue in his own name where the agent has an interest in the subject matter of the contract. See *Tinsley v. Dowell*, 87 Tex. 23, 26 S.W. 946 (1894); *Wilson County Peanut Company v. Hahn*, *supra* at 470. However, Breland contends that Perry could not have an interest in the subject matter of this contract because Perry was not a licensed dealer as required under Section 503.021. Even assuming that a sale to Perry individually would have been void under Section 503.021, a proposition we have rejected, Perry's furnishing of the money to pay Breland gave Perry an interest in the subject matter of the contract.[2]

We sustain Perry's first two points of error. We need not address his third point of error. Perry has standing to sue Breland.

### The Summary Judgment Granted to Sporn and State Farm

■■■■■ A trial court should grant a motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A trial court properly grants summary judgment in favor of a defendant if the defendant either establishes all elements of an affirmative defense or disproves at least one element of the plaintiff's case. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the non-movant and indulges every reasonable inference and resolves any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra* at 425; *Nixon v.*

*Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■■■■■ Once the movant establishes a right to summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). The question is not whether the summary judgment proof raises fact issues with reference to elements of a claim or defense but whether the summary judgment proof establishes or disproves the elements of a claim or defense as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). When an appellant challenges the propriety of a summary judgment on specific grounds, the appellate court may only consider those grounds. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

■■■■ Perry's lawsuit against Sporn and State Farm consists of three causes of action: conversion; breach of contract; and negligence. A cause of action for conversion requires that a plaintiff prove that he or she is the owner of the property converted. See *Artripe v. Hughes*, 857 S.W.2d 82, 86 (Tex.App.—Corpus Christi 1993, writ den'd). In their motion for summary judgment on Perry's conversion action, Sporn and State Farm set forth two grounds. First, Perry is collaterally estopped from relitigating the issue of ownership of the Suburban because the Brown County Justice of the Peace Court decided that issue. Secondly, State Farm is the owner of the Suburban as a matter of law even if collateral estoppel does not apply. Sporn and State Farm moved for summary judgment on the breach of contract action claim, claiming that they had no contractual relationship with Perry, and on the negligence action, claiming that as a matter of law Sporn owed no duty to Perry.

---

**2.** Even if he had simply loaned the money to Car Town, Perry would be a purchaser within TEX. BUS. & COM. CODE ANN. § 1.201 (Vernon 1994 & Supp.2000). See *Leif John-son Ford, Inc. v. Chase National Bank*, 578 S.W.2d 792, 794 (Tex.Civ.App.—Beaumont 1978, no writ).

### A. Sporn and State Farm Cannot Rely on Collateral Estoppel

In his fourth and fifth points of error, Perry argues that, before the Brown County Justice of the Peace Court's order can constitute collateral estoppel on the issue of the Suburban's ownership, Sporn and State Farm must establish that the justice court had jurisdiction to determine that question.

It is undisputed that the Suburban had a value in excess of $5,000. The Justice of the Peace Court is a court of limited jurisdiction, and its jurisdiction in civil matters is limited to those controversies involving not more than $5,000, exclusive of interest. TEX. GOV'T CODE ANN. § 27.031 (Vernon Supp.2000). Section 27.031, however, does provide that the jurisdictional limits set forth in the section are "[i]n addition to the jurisdiction and powers provided by... other law."

Sporn and State Farm argue that another law, TEX. CODE CRIM. PRO. ANN. art. 47.01a(a) (Vernon Pamph. Supp. 2000), gave the Brown County Justice of the Peace Court jurisdiction over the stolen Suburban. Article 47.01a(a) provides:

> If a criminal action relating to allegedly stolen property is not pending, a district judge, county court judge, statutory county court judge, or justice of the peace having jurisdiction as a magistrate in the county in which the property is held...may hold a hearing to determine *the right to possession of the property.* (Emphasis added)

Article 47.01a(a) gives the justice court a limited jurisdiction to determine the right to possession of the property only. Sporn and State Farm argue, however, that the justice court based its decision on possession upon its finding of ownership. They have cited no case where a justice court has circumvented its limited jurisdiction in this manner, and we decline to so hold. The justice court had no jurisdiction to determine ownership of the Suburban; therefore, the justice court's order cannot be the basis for collateral estoppel.

There is an additional reason why Article 47.01a(a) did not provide a jurisdictional basis for the justice court's finding. The parties all agree that the proceedings in the justice court occurred after Worley pleaded guilty to theft by check. Article 47.01a(a) speaks of "allegedly" stolen property. Property is only "allegedly" stolen when there has been no conviction for theft. Article 47.01a(a) also speaks of a criminal action "not pending." A criminal action begins with an indictment or information. See TEX. CODE CRIM. PRO. ANN. ch. 21 (Vernon 1989 & Supp. 2000); see also *Beaupre v. State*, 526 S.W.2d 811, 814 (Tex.Cr.App.1975). A criminal action ends with an acquittal or the issuance of a mandate. If an acquittal occurs, the property is not stolen; if mandate issues, the property is not "allegedly" stolen. Therefore, Article 47.01a(a), by its plain language, applies only to a proceeding occurring before the presentment of an indictment or information. Once a criminal action is pending, jurisdiction to dispose of the property lies in the trial court conducting the criminal proceedings. TEX. CODE CRIM. PRO. ANN. art. 47.02 (Vernon Pamph. Supp.2000). The justice court had no jurisdiction under Article 47.01a(a) to determine ownership of the Suburban.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.004 (Vernon 1997) specifically precludes Sporn and State Farm from being able to rely on the justice court for collateral estoppel:

> (a) A judgment or a determination of fact or law in a proceeding in a lower trial court is not res judicata and is not a basis for estoppel by judgment in a proceeding in a *district court*, except that a judgment rendered in a lower trial court is binding *on the parties thereto* as to recovery or denial of recovery.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (c) For the purposes of this section, a "lower trial court" is a small claims

court, a justice of the peace court, a county court, or a statutory county court. (Emphasis added)

Perry was not a party to the proceedings in the justice of the peace court. Even assuming there was jurisdiction to determine possession, the order of the justice court was binding only upon State Farm and Allcorn as to possession of the Suburban at that time. See *Wren v. Gusnowski*, 919 S.W.2d 847 (Tex.App.—Austin 1996, no writ).

We sustain Perry's fourth and fifth points of error. It is unnecessary to address his sixth point of error because of our conclusion that the justice court lacked jurisdiction to determine ownership of the Suburban.

### B. Sporn and State Farm Have Not Established Ownership

In their motion for summary judgment, Sporn and State Farm sought to conclusively negate Perry's claim of ownership of the vehicle. They contend that Worley as a thief could not transfer title to anyone. *Chapman Motors, Inc. v. J.C. Taylor*, 506 S.W.2d 724, 726 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). They also argued that the sale from Worley to Breland was void under the Texas Certificate of Title Act because the information set forth in the odometer disclosure statement was false and because Worley misrepresented his ownership of the Suburban.

 Sporn and State Farm's reliance on *Chapman Motors* is misplaced. The theft in that case involved a physical taking of the car from the car lot and the title from a desk inside the office of Chapman Motors. Theft by check differs in its

effect on commercial transactions. Worley gave Sporn a check which was subsequently dishonored. Sporn transferred good title to Worley which was voidable once Worley's check was dishonored. *Leif Johnson Ford, Inc. v. Chase National Bank*, 578 S.W.2d 792 (Tex.Civ.App.—Beaumont 1978, no writ). Sporn and State Farm argue that *Leif Johnson Ford* is distinguishable because there was no violation of the Texas Certificate of Title Act in that case whereas, in the present case, Worley violated the Act by filling in an erroneous odometer reading. The delivery of an incorrect odometer disclosure statement does not in itself void an otherwise enforceable transaction. Jarrin v. Sam White Oldsmobile Co., supra. When he conveyed the Suburban to Breland, Worley held a voidable title; thus, there was no violation of the Texas Certificate of Title Act by Worley representing himself as the owner at that time.[3]

Sporn and State Farm contend that *Jarrin* simply follows the line of cases holding that two parties may transfer title to a motor vehicle even though the requirements of the Texas Certificate of Title Act are not met. They further contend that *Phil Phillips Ford, Inc. v. St. Paul Fire and Marine Insurance Company*, 465 S.W.2d 933 (Tex.1971), requires that any violation of the Act renders the transfer void as to third parties. Under this reasoning, the incorrect odometer disclosure statement would void the conveyance between Sporn and Worley when considering Perry's rights. We believe that Sporn and State Farm read *Phil Phillips Ford* too broadly.

---

3. Since Worley d/b/a T & W Auto Sales appears to have been a dealer, it is not clear that his transfer to Breland, another dealer, had to comply with the *Texas Certificate of Title Act*. *Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482 (1943); *Najarian v. David Taylor Cadillac*, 705 S.W.2d 809, 811 (Tex.App.—Houston [1st Dist.] 1986, no writ); *National Auto. & Cas. Ins. Co. v. Alford*, 265 S.W.2d 862, 865 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.). Section 501.002(16) of the Act defines an "[o]wner" as "a person, other than a...dealer," and Section 501.071 provides that "[a] motor vehicle may not be the subject of a subsequent sale unless the *owner* designated in the certificate of title transfers the certificate of title at the time of the sale." But see *Gallas v. Car Biz, Inc.*, 914 S.W.2d 592 (Tex.App.—Dallas 1995, writ den'd). (Emphasis added)

The precedential value of *Phil Phillips Ford* is unclear because the Supreme Court affirmed the summary judgment on a ground not mentioned in the motion for summary judgment. Furthermore, the violation of the Texas Certificate of Title Act was that:

It is apparent from the record that Dignan failed to comply with the statute. He did not sign his Texas certificate of title at the time it was issued, and he did not sign the reverse side of the certificate at the time of his sale to Ford. His signature on the reverse side would have required his affidavit that there were no liens on the vehicle other than those indicated. At the time the vehicle was repossessed, Dignan had not executed either the front or back side of his certificate of title. Dignan gave Phillips his power of attorney and certainly Phillips had the right to take all necessary steps to comply with the statute and transfer the title certificate from Dignan to Ford or another. See, *Freeberg v. Securities Investment Co.*, 331 S.W.2d 825 (Tex. Civ.App.1960, writ ref.).

The Supreme Court implied that the opposite result would have been reached if Dignan had signed and properly transferred the certificate of title to Ford or if Phillips had exercised his authority to execute the transfer. The violation of the Texas Certificate of Title Act was clear to anyone investigating Ford's chain of title. In our case, the only violation of the Texas Certificate of Title Act was that Worley filled in an erroneous odometer reading. To agree with Sporn and State Farm would mean that any misstatement of an odometer reading would void a transfer of a vehicle despite the error not being obvious to a subsequent purchaser.

 We decline to hold that such a violation of the Texas Certificate of Title Act voids a transfer as to third parties later in the chain of title. It would be too onerous a burden on commerce if every purchaser of an automobile has to verify the odometer reading of every transfer in

his chain of title or risk there being a void transaction. See *Jarrin v. Sam White Oldsmobile Co., supra* at 24. Sporn and State Farm did not establish their ownership of the Suburban as a matter of law.

We sustain Perry's seventh, eighth, and tenth points of error.

### C. Perry's Breach of Contract Claim Against Sporn and State Farm

 Sporn and State Farm moved for summary judgment on Perry's breach of contract claim on the ground that they had no contractual relationship with Perry. A claim for breach of warranty against a remote vendor of personal property may be sustained without contractual privity between the plaintiff and the remote vendor. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977); *Mitchell v. Webb*, 591 S.W.2d 547, 551 (Tex.Civ. App.—Fort Worth 1979, no writ).

Sporn and State Farm argue that, in any case, Sporn has no obligation to honor any warranty of good title because he was not compensated for it by Worley. In the limited record before us, it would appear that Sporn did not breach his warranty of title because he did transfer voidable title to Worley. In the interest of justice, however, this issue should be included in our remand. TEX.R .APP.P. 43.3.

We sustain Perry's ninth point of error.

### D. Perry's Negligence Action

 Section 501.072(a) of the Texas Certificate of Title Act provides that Sporn had a duty to provide his buyer with an accurate odometer reading:

Except as provided by Subsection (c), the seller of a motor vehicle sold in this state shall provide to the buyer, on a form prescribed by the department, a written disclosure of the vehicle's odometer reading at the time of the sale.

Sporn admitted that he authorized Worley to fill in the odometer reading. Perry contends that, if he had known the Suburban had been driven 165,000 miles and not

65,000 miles, he would not have paid Breland the amount that he did pay. Section 501.072(a) imposed a duty on Sporn to fill in an accurate odometer reading. We are not prepared at this time to say that this duty does not extend to remote buyers of the vehicle. Sporn did not conclusively establish that he was not negligent.

We sustain Perry's eleventh point of error.

### This Court's Ruling

We reverse the judgment of the trial court and remand this cause for further proceedings.