# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-03-00753-CV

---

**H. C. Carter, Appellant**

**v.**

**Dripping Springs Water Supply Corporation, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. 02-1912, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

H.C. Carter ("Carter") entered into an agreement with Dripping Springs Water Supply Corporation ("DSWSC") in which Carter agreed to sell property to DSWSC for the purpose of developing a wastewater treatment facility. One of the provisions of the contract allowed Carter to repurchase the property in question if Drippings Springs was unable to build the treatment facility. Carter filed suit to enforce the buyback provision, but the district court granted DSWSC's plea to the jurisdiction and dismissed the case. Carter appeals the district court's grant of the plea to the jurisdiction. We will reverse the order and remand the cause.

### FACTUAL AND PROCEDURAL BACKGROUND

Carter is an individual residing in Hays County, Texas. DSWSC is a non-profit member-owned Texas water-supply corporation with its principal place of business in Dripping

Springs, Texas. In February 1997, Carter entered into an unimproved-property purchase contract with DSWSC for the sale of approximately seventeen acres. DSWSC acquired the property for the purpose of building a wastewater treatment facility. The contract contained the following buyback provision:

> In the event [DSWSC] is unable to obtain environmental, historical, archeological, permitting or such other clearance or approvals from governmental regulatory agencies after the purchase of the property, or for any other reason [DSWSC]'s wastewater facility cannot go forward, [DSWSC] must hold the property for a period of two years from the date of closing. [DSWSC] must then offer [to] resell the exact same property to [Carter] for $87,500.00 and hold such offer to [Carter] open for six (6) months from date of notice. At anytime after receiving notice to repurchase the land, but not after six months from receipt of notice, [Carter] shall repurchase the land for the sum of $87,500.00, plus the cost of any boundary survey which may be required by [Carter] or any third party lender. [DSWSC] shall furnish a title policy and convey good title by general warranty deed to [Carter] in the event of such repurchase. (altered to substitute "DSWSC" for "Buyer" and "Carter" for "Seller").

The parties interpret the buyback provision in different ways. Carter takes the position that the buyback agreement creates a two-year time limit in which DSWSC is required to obtain all the necessary permits to build the facility and proceed in building the facility. Further, Carter alleges that when the two-year period of time expired, the contract gave Carter the right to repurchase the property for six months thereafter. Carter insists that DSWSC did not satisfy the two-year provision because it did not obtain all the permits necessary to build the facility; he asserts that DSWSC never applied for nor received a site-development permit from the City of Dripping Springs, which is necessary for the development of any land that is within the corporate limits of the City of Dripping Springs or its extraterritorial jurisdiction. *See* Dripping Springs, Tex., Ordinance No. 52-B

2

§ 10A (2001), at p. 13.[1] However, DSWSC counters by contending that it has been able to obtain the necessary permits to proceed with the facility. Specifically, DSWSC insists its proposed wastewater facility has been permitted by the Texas Commission on Environmental Quality ("the Commission").[2] Further, DSWSC asserts that it has a certificate of convenience and necessity authorizing it to provide water service in portions of Hays County and a Texas Pollutant Discharge Elimination System permit, which allows it to provide wastewater treatment and disposal services in Hays County.

Carter also contends that it is not possible for DSWSC to build the treatment facility and insists that, as a result, Carter is entitled to repurchase the property. Carter asserts that because of the passage of an ordinance by the City of Dripping Springs and because of a provision in the contract requiring DSWSC to construct a 150-foot natural-vegetative buffer along the property boundary, it is physically impossible for DSWSC to build a treatment facility on the property in question. The ordinance in question was enacted in May 2001, and the ordinance listed restrictions for building an organized disposal system within Dripping Springs or within its extraterritorial jurisdiction. *See* Dripping Springs, Tex., Ordinance No. 52-D (2001). Specifically, the ordinance stated that the plans for an organized disposal system will not be approved if any portion of the

---

[1] It is worth noting that the City of Dripping Springs passed an ordinance specifying that the seventeen acres in question lie within the extra-territorial jurisdiction of Dripping Springs. *See* Dripping Springs, Tex., Ordinance No. 1310.26 (2003).

[2] For convenience, we will refer to both the Commission and its predecessor, the Texas Natural Resource Conservation Commission, as the Commission.

3

system's treatment facilities, storage ponds, or surface irrigation components are located within 500 feet of the boundary of any city park or any land owned by an organization whose purpose is to protect, promote, maintain, or restore any structure listed on the National Register of Historic Places. In the ordinance, an organized disposal system is defined as "[a]ny publicly or privately owned system for the collection, treatment and/or disposal of sewage from more than one residence, duplex or commercial building that is installed and operated in accordance with the terms and conditions of a valid permit issued by" the Commission. The facility discussed in the contract was a wastewater treatment facility that could provide service to 120 single-family lots. Carter claims the seventeen acres is next to a park and a recorded historical landmark. Therefore, Carter insists the 500-foot provision applies to the property in question.

DSWSC counters and contends that, under the contract, it has a reasonable amount of time to exhaust all alternatives, that the buyback provision does not have a two-year time limit, and that before Carter can seek to repurchase the property, DSWSC must give Carter notice. Further, DSWSC contends the ordinance does not apply to the property in question, it is not impossible for DSWSC to build the facility on the property in question, and unless Carter can prove as a matter of law that it is physically impossible for it to build the facility, then Carter's claims are not ripe, and he is not entitled to proceed in district court.

In July 1997, Carter offered to purchase lot twenty, which is another piece of property owned by DSWSC that was purchased in order to access the original seventeen acres. Carter contends that the offer did not contain a time limit and that the offer was never revoked. Carter also alleges the Board of Directors of DSWSC held a meeting and agreed to accept Carter's offer to

purchase lot twenty. In August 1997, Joel Wilkinson, who was an employee of DSWSC, sent Carter a letter stating that the Board had agreed to grant Carter the first right to purchase the lot at the price DSWSC had paid in the event the lot and the seventeen-acre tract were not used for developing wastewater facilities. Carter asserts that he believed, based on his prior interactions with Wilkinson during the original contract formation, that Wilkinson was authorized to accept Carter's offer; however, DSWSC denies that Wilkinson had the authority to accept Carter's offer. Further, Carter asserts that his offer and DSWSC's acceptance letter created an amendment to the original contract and that he is entitled to purchase the seventeen acres and lot twenty.

In April 2001, Carter wrote a letter to the president of DSWSC asking to purchase lot twenty and the original seventeen acres under the buyback provision of the contract, and he tendered $10,000 as a down payment. Carter stated in the letter that if DSWSC refused to sell the property to him, he would be forced to sue DSWSC. DSWSC refused to sell any of the property to Carter.

Carter filed suit seeking a declaratory judgment regarding his rights and obligations under the buyback provision of the contract. Carter contended that DSWSC had not received all the necessary permits and approvals for the wastewater facility to go forward and that it was not possible for DSWSC to build the wastewater facility as required under the terms of the contract. Carter sought a declaration that, as a result of DSWSC's alleged inability to obtain permits and inability to build the facility, he was entitled to exercise his right to purchase the seventeen acres and lot twenty.

Carter then filed an amended motion for summary judgment. In response, DSWSC filed its own motion for summary judgment and a plea to the jurisdiction, styled as a motion to

5

dismiss for lack of jurisdiction, and asserted the following: (1) Carter's claims were not ripe for review and (2) Carter lacked standing to sue. Both parties attached attorney's fees affidavits to their pleadings.

The district court denied both motions for summary judgment and granted DSWSC's plea to the jurisdiction without findings of fact or conclusions of law. Further, the district court also awarded $22,986.94 to DSWSC for attorney's fees. In response, Carter filed a motion for reconsideration and contended that the district court could not award attorney's fees if it granted DSWSC's plea to the jurisdiction. The district court denied the motion for reconsideration, signed an order dismissing Carter's action without prejudice, and awarded DSWSC $22,986.94 in attorney's fees.

Carter filed a request for findings of fact and conclusions of law to determine what evidence the trial court had relied on in sustaining DSWSC's plea to the jurisdiction. Also, Carter filed a motion for new trial. The district court denied both the request and the motion for new trial. Carter appeals the district court's decisions and asserts the district court erred by granting DSWSC's plea to the jurisdiction, by awarding DSWSC attorney's fees, by denying Carter's motion for a new trial, and by concluding that some of Carter's objections to the attorney's fees were waived.

**DISCUSSION**

The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims raised are meritorious. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When deciding a plea to the jurisdiction, the court should not reach the merits of the case. *Id.* A court should look to the facts alleged in the pleadings and may consider evidence when

6

necessary to resolve the jurisdictional questions in issue. *Id.* at 555. A court should construe the pleadings liberally in a way that favors jurisdiction unless the petition affirmatively demonstrates a lack of jurisdiction. *See Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex. 1989).

**Ripeness**

In its plea to the jurisdiction, which the district court granted, DSWSC alleged that Carter's claims were not ripe. Specifically, DSWSC's plea to the jurisdiction contended that Carter's claims were not ripe because (1) no facts support Carter's charge that it was impossible for DSWSC to build its wastewater facility; (2) the property in question is outside Dripping Springs's city limits and, therefore, not bound by the city ordinances that Carter alleges prevent DSWSC from building its facility; (3) the buyback provision does not specify when DSWSC must send notice to Carter of his right to repurchase the property; and (4) no notice has been received by Carter, so Carter is not entitled to enforce the buyback provision.

For a claim to be justiciable, the claim must be ripe, and the concept of ripeness emphasizes the need for a concrete injury and focuses on when an action may be brought. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Under the ripeness doctrine, courts consider whether, at the time a lawsuit is filed, the facts are sufficiently developed and show that an injury has or is likely to occur. *Id.* at 852. A case is not ripe if determining whether a plaintiff has a concrete injury depends on events that have not come to pass or that are based on hypothetical or contingent facts. *Id.*

A declaratory judgment, on the other hand, is appropriate if a justiciable controversy exists as to the rights and status of the parties and if the controversy will be resolved by the

7

declaration sought. *Bonham State Bank v. Beadle,* 907 S.W.3d 465, 467 (Tex. 1995). Determining whether a court has jurisdiction over a declaratory-judgment action is a question of law and is subject to de novo review. *Paulsen v. Texas Equal Access to Justice Found.*, 23 S.W.2d 42, 44 (Tex. App.—Austin 1999, pet. dism'd), *order withdrawn on other grounds* (April 26, 2001); *see* Texas *Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004) (subject matter jurisdiction reviewed de novo). The Uniform Declaratory Judgment Act gives an individual whose rights and legal relations are at issue in a contractual dispute a vehicle where he can solicit the court to resolve questions of construction or validity under a contract. *National County Mut. Fire Ins. Co. v. Johnson*, 829 S.W.2d 322, 324 (Tex. App.—Austin 1992), *aff'd*, 879 S.W.2d 1 (Tex. 1993). Section 37.004(b) of the Uniform Declaratory Judgment Act provides that "[a] contract may be construed before or after there has been a breach." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(b) (West 1997).

DSWSC asserts on appeal that, in this case, determining whether Carter has a concrete injury depends upon events that have not yet come to pass; therefore, DSWSC insists that the case is not ripe. Further, DSWSC contends that the facts supporting Carter's right to seek a declaratory judgment were not in existence at the time Carter filed suit and that the conditions that needed to be met in order for Carter to demand DSWSC resell the property to him had not occurred. Specifically, DSWSC asserts that Carter's ability to repurchase the seventeen acres and lot twenty was contingent upon DSWSC being unable to obtain permits for the wastewater facility or being prevented from going forward with development. However, DSWSC insists that neither one of these events has occurred. In addition, DSWSC urges that the six-month-notice provision requires that

8

DSWSC send notice to Carter informing him of his right to repurchase the property before the buyback provision takes effect and that the requirement does not specify when DSWSC must send notice to Carter. Because no notice has been sent, DSWSC insists that Carter is not able to force the sale of the properties and that his claims are, therefore, not ripe.

In support of its position that a case is not ripe if the injury depends on events that have not yet occurred and that a court may not rule on a hypothetical fact situation, DSWSC relies on many cases. *See, e.g.*, *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149 (Tex. 1988) (exemption denied most agricultural workers benefits, but case not ripe because Commission had, at time of judgment, not attempted to deny benefits); *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331 (Tex. 1968) (asking court to declare liability of insurance company upon a judgment that may be rendered in the future is purely speculative, so declaratory judgment inappropriate). However, these cases are distinguishable from this case because here a court is not being asked to make a declaration based upon facts that may or may not occur in the future. Rather, this case asks a court to choose between two competing interpretations of a contract whose terms are dependent upon future events. *See, e.g.*, *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462 (Tex. 1998) (court asked to declare whether insurance contract's pollution exclusion clause excluded Kelley from clean up costs).

Thus, DSWSC is urging an interpretation contrary to Carter's, but if these issues are not determined by a trial court on the merits and if the contract provisions are not construed, the parties will never receive a resolution on the merits. Essentially what the trial court did was to

9

decide on the merits that DSWSC was still "going forward" under the contract, but, under this view, the case would never be ripe for resolution.

For ripeness to bar Carter's claim, we would have to assume that DSWSC's construction of the contract is correct. However, the contract can be construed in other ways. Under DSWSC's interpretation, the events triggering the buyback provision have not occurred; however, under Carter's interpretation, the events triggering the buyback provision have already occurred. Carter asserts that the buyback provision requires DSWSC to resell the property to Carter two years after the date of closing if DSWSC is not able to obtain all the necessary permits and approvals by that time and that the failure to do so is a breach of the contract. Further, Carter insists that the language "and hold such offer to Seller open for six (6) months from date of notice" does not create a condition precedent under which DSWSC must give Carter notice before he can repurchase the property. Rather, Carter contends that the six-month provision refers to the six-month period after Carter has been offered the property in which he could exercise his mandatory right to purchase the property. DSWSC, on the other hand, alleges that the six-month notice requirement means that DSWSC must give Carter notice of his buyback right before Carter can sue. Both Carter's and DSWSC's readings of the contract are reasonable, and Carter is entitled to have the court determine what the buyback provision means.

Whether it is possible for DSWSC to build its facility on the property in question as a result of the city ordinances and the vegetative buffer requirement is a determination the trial court must make because it is an argument on the merits. Because the only way to resolve these disputed issues is a trial on the merits, we hold that Carter's claims are ripe for consideration.

**Standing**

Although DSWSC's plea to the jurisdiction contained allegations of both ripeness and standing, the district court did not differentiate between the two allegations when it granted DSWSC's plea. On appeal, DSWSC has only argued the ripeness issue. However, we will examine the standing issue briefly.

In DSWSC's plea to the jurisdiction, which the trial court granted, DSWSC alleged that Carter did not have standing to file this suit because there was a variation in how Carter was identified in his original petition and request for declaratory relief and in the general warranty deed.

We review a claim that a trial court lacks subject-matter jurisdiction under a de novo standard. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). A party interested in a contract or other writings constituting a contract who desires to have the contract construed by a court in order to determine his rights, status, or other legal relations affected by the contract has standing to file suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997).

*Name Discrepancy*

DSWSC contends that because the general warranty deed names H.C. Carter, Trustee as guarantor and because the plaintiff's original petition and request for declaratory judgment was filed by H.C. Carter, individually, then the trial court lacked subject-matter jurisdiction over the claim. DSWSC contends that because the property was conveyed by H.C. Carter, Trustee rather than H.C. Carter, then Carter was not the "seller" under the contract and, therefore, Carter had no interest to adjudicate. Further, DSWSC argues that, as a result of the discrepancy in names, Carter did not

11

possess title to the seventeen acres at the time of contract or at the time the general warranty deed was obtained and, therefore, did not satisfy all the conditions precedent required to maintain this suit.

However, a party does not always have to be identified in the exact same manner in every document for a claim to be valid, especially when there is no evidence that a different person was meant to be identified. *See, e.g.*, *Salazar v. Tower*, 683 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1984, no writ) (omission of "Jr." insufficient to establish lack of identity). This proposition seems especially true where, as here, the difference was the presence of a title and not a difference in a name.

Further, to the extent that DSWSC argued that Carter does not have the capacity to sue because the deed names H.C. Carter, Trustee, DSWSC is urging a distinction that does not matter under the facts of this case. Even assuming Carter acted as an agent, an agent may sue in his own name when the agent contracts in his own name. *See Perry v. Breland*, 16 S.W.3d 182, 187 (Tex. App.—Eastland 2000, pet. denied). Carter contracted in his own name as evidenced by the contract at issue in this case, which defines Carter as the seller. In addition, Carter and DSWSC should be allowed to present evidence at trial on whether or not Carter has satisfied all the necessary prerequisites for filing suit.

We hold that the trial court has subject-matter jurisdiction over this case, and we hold that Carter has standing to file this claim.

**CONCLUSION**

Because we conclude that the claims presented were ripe for resolution, that the trial court had subject-matter jurisdiction, and that Carter had standing to file the suit, we reverse the

12

district court's order granting DSWSC's plea to the jurisdiction and remand the case for further proceedings not inconsistent with this opinion.[3]

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear;
    Justice Kidd Not Participating

Reversed and Remanded

Filed:  January 21, 2005

_____

[3] Because we are reversing the order of the district court, we need not address the issue of attorney's fees or objections to attorney's fees.

13