COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-345-CV

 

 

PAUL SCHAMBACHER                                                                      APPELLANT

 

                                                             V.

 

R.E.I ELECTRIC, INC. AND                                                                APPELLEES

GARLAND
INSULATING, LTD.

 

                                                           AND

 

R.E.I. ELECTRIC, INC.                                                                       APPELLANT

 

                                                             V.

 

PAUL SCHAMBACHER                                                                         APPELLEE

 

                                                       ------------

 

               FROM
THE 67TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

 

 








I.  Introduction

Appellant
Paul Schambacher appeals the trial court=s grant
of summary judgment in favor of Appellees R.E.I. Electric, Inc. and Garland Insulating,
Ltd. on his claims for breach of contract, breach of implied and express
warranties, and negligence.  R.E.I.
appeals the trial court=s grant of summary judgment in
favor of Schambacher on its fraud counterclaim. 
We will affirm in part and reverse and remand in part.

II.  Factual and Procedural Background

In 2005,
Schambacher purchased a vacant lot at 932 Tealwood Drive in Keller.  He decided to build a house on the lot and,
along with his wife, executed a AResidential
Construction Contract, Fixed Price@ (Aconstruction
contract@) with
SCC Homes, Ltd. D.B.A. Sterling Classic Custom Homes (ASCC@).  Under the July 2005 construction contract,
SCC agreed to Aconstruct improvements on@ the lot
in exchange for the Schambachers=
agreement to pay SCC $513,580 (the Ahousing
project@).

In
September 2005, SCC entered into an AIndependent
ContractorBSupplier Base Agreement@ (Aindependent
contractor agreement@) with Garland whereby Garland
agreed to perform work for SCC at SCC=s
request.  The independent contractor
agreement became effective from the date of its execution and continued until
terminated by either party upon thirty days= written
notice.








R.E.I.
performed the electrical work on the housing project.  It billed invoices to SCC on December 23,
2005; March 15, 2006; and March 22, 2006. 
Under the ABill To@ section
of a February 27, 2006 R.E.I. invoice, ASterling
Classic Custom Homes@ is crossed out and APaul@ is
written in.  According to Edwin Haugen,
an R.E.I. representative, R.E.I had performed jobs for SCC in the past, but it
had not entered into written contracts with SCC for those jobs.

Garland
performed the insulation services for the housing project.  It billed invoices to SCC on January 6, 2006,
and March 21, 2006.  At the time of trial
Garland had performed insulation jobs for SCC for about two to three years.

On March
22, 2006, the house, which was A99.9
percent complete,@ was destroyed by a fire.  Assurance Company of America (AAssurance@),
Schambacher=s insurer, pursued a subrogation
action against R.E.I. and Garland, eventually settled and dismissed its claims
against R.E.I. and Garland, paid Schambacher approximately $495,000 under the
builder=s risk
insurance policy that Schambacher had obtained on the house, and assigned Athe
entirety of its claim,@ which included a fraud claim
against Schambacher, to R.E.I. and Garland.








Meanwhile,
Schambacher intervened in the suit and asserted claims against R.E.I. and
Garland for negligence, breach of express and implied warranties, breach of
contract, and violations under the Deceptive Trade Practices Act (ADTPA@).[2]  R.E.I. asserted a counterclaim against Schambacher
for fraud based on a claim for reimbursement in the amount of $77,000 that
Schambacher had submitted to Assurance and that Assurance had paid to him
arising out of a fee that he had purportedly paid to SCC to serve as the
general contractor for the housing project.

Discovery
conducted by the parties showed that Schambacher has a Atight
relationship@ with SCCChe is a
former superintendent for SCC and his brother, Scott Schambacher, owns
SCC.  Discovery also revealed that
although both Schambacher and Scott (on behalf of SCC) identified SCC as the Ageneral
contractor@ for the housing project,
Schambacher and SCC had agreed to an unwritten Aarrangement@ that
substantially limited SCC=s duties as general contractor
for the housing project.  Specifically,
according to Schambacher and SCC, SCC=s role as
general contractor was limited to (1) providing Schambacher with a list of
subcontractors from which he could select and hire the subcontractor of his
choice and (2) passing along invoices to Schambacher that it had received
from the subcontractors who performed work on the housing project.  As part of its providing Schambacher with a
list of subcontractors, SCC allowed him to use its Abuying
power@ to
negotiate pricing with the subcontractors; in other words, Schambacher had
permission to use SCC=s name to obtain pricing
discounts based on SCC=s volume of work.








According
to SCC, in light of its limited role, it had no oversight responsibility
whatsoever for the housing project; it did not have a duty to select the
subcontractors, to issue job-start orders, to monitor the progress of work on
the housing project, or to confirm that work had been completed.  Instead, according to Schambacher, he exercised
the duties of hiring the subcontractors, including R.E.I., and the general
contractor, SCC; overseeing the construction of the house; and managing,
communicating with, and paying the subcontractors, which he did using funds
from his personal account.  Schambacher
did not discuss his arrangement with SCC with any of the subcontractors hired
to perform work on the housing project.

Both
R.E.I. and Garland filed motions for summary judgment on Schambacher=s claims,
and Schambacher filed a no-evidence motion for summary judgment on R.E.I.=s fraud
counterclaim.  R.E.I. and Garland
challenged Schambacher=s breach of contract and warranty
claims on the basis of an absence of privity, and they challenged Schambacher=s
negligence claims under the economic loss doctrine.  Schambacher included his affidavit in
response to R.E.I.=s and Garland=s
motions, but the trial court sustained R.E.I.=s and
Garland=s
objections to the affidavit and struck it. 
The trial court granted all of the motions for summary judgment.  Schambacher and R.E.I. appeal.

III.  Standards of Review

A.      Traditional Motion for Summary Judgment








We review
a summary judgment de novo.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  We consider the evidence
presented in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding evidence
contrary to the nonmovant unless reasonable jurors could not.  Id. 
We indulge every reasonable inference and resolve any doubts in the
nonmovant=s favor.  20801, Inc. v. Parker, 249 S.W.3d 392,
399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim. 
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).  Once the defendant produces sufficient evidence
to establish the right to summary judgment, the burden shifts to the plaintiff
to come forward with competent controverting evidence that raises a fact
issue.  Phan Son Van v. Peña, 990
S.W.2d 751, 753 (Tex. 1999).

B.      No-Evidence Motion for Summary Judgment

After an
adequate time for discovery, the party without the burden of proof may, without
presenting evidence, move for summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim
or defense.  Tex. R. Civ. P.
166a(i).  The motion must specifically
state the elements for which there is no evidence.  Id.; Timpte Indus., Inc. v. Gish,
286 S.W.3d 306, 310 (Tex. 2009).  The
trial court must grant the motion unless the nonmovant produces summary
judgment evidence that raises a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) &
cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

 

 








IV.  Schambacher Affidavit

In his
first, second, and third issues, Schambacher argues that the trial court erred
by striking his affidavit under the various theories argued by R.E.I. and
Garland.  We hold that the trial court=s error,
if any, in striking Schambacher=s
affidavit was harmless because the assertions contained in his affidavit that
are relevant to the issues on appealCthat
Schambacher and SCC had agreed to an unwritten Aarrangement@ that
substantially limited SCC=s duties as general contractor
for the housing project, that SCC had no oversight responsibility for the
housing project, and that Schambacher oversaw the housing project and managed
the subcontractors, among other thingsCare
additionally found in deposition excerpts that are part of the summary judgment
record.  See Tex. R. App.
P. 44.1(a) (requiring appellant to demonstrate harm to obtain reversal on
appeal).  Accordingly, we overrule
Schambacher=s first, second, and third
issues.

V.  PrivityCSchambacher=s Contract and Warranty Claims

In his
fourth and fifth issues, Schambacher argues that the trial court erred by
granting summary judgment for both R.E.I. and Garland on his claims for breach
of contract and for breach of implied and express warranties.  He contends that his summary judgment
evidence raised a genuine issue of material fact that he was the contracting
partyCand,
thus, was in privityCwith R.E.I. and Garland.

 

 








A.      Contracts and Warranties

Schambacher
does not dispute R.E.I.=s and Garland=s
arguments that he must demonstrate privity to recover under his contract and
warranty claims.  The general rule is
that only parties to a contract have the right to complain of a breach
thereof.  Wells v. Dotson, 261
S.W.3d 275, 284 (Tex. App.CTyler
2008, no pet.); see Jensen Constr. Co. v. Dallas County, 920 S.W.2d 761,
772 (Tex. App.CDallas 1996, writ denied)
(reasoning that privity of contract is required for any recovery in an action
based on construction contracts), overruled in part by Travis County v.
Pelzel & Assocs., Inc., 77 S.W.3d 246, 251 (Tex. 2002).  Privity of contract is established by proving
that the defendant was a party to an enforceable contract with either the
plaintiff or a party who assigned its cause of action to the plaintiff.  Conquest Drilling Fluids v. Tri-Flo Int=l, Inc., 137
S.W.3d 299, 308 (Tex. App.CBeaumont
2004, no pet.)

Regarding
breach of implied warranty claims, Texas courts have consistently held that a
property owner may not recover from a subcontractor with whom the owner had no
direct contractual relationship.  Glenn
v. Nortex Foundation Designs, Inc., No. 02-07-00172-CV, 2008 WL 2078510, at
*3 (Tex. App.CFort Worth May 15, 2008, no pet.)
(mem. op.) (citing J.M. Krupar Constr. Co. v. Rosenberg, 95 S.W.3d 322,
332 (Tex. App.CHouston [1st Dist.] 2002, no
pet.), Raymond v. Rahme, 78 S.W.3d 552, 563 (Tex. App.CAustin
2002, no pet.), and Codner v. Arellano, 40 S.W.3d 666, 672B74 (Tex.
App.CAustin
2001, no pet.)).








The
supreme court has described an express warranty as part of the basis of a
bargain, the result of a negotiated exchange, and, thus, contractual in
nature.  Med. City Dallas, Ltd. v.
Carlisle Corp., 251 S.W.3d 55, 60B61 (Tex.
2008).

B.      Garland

Garland=s summary
judgment evidence, which includes excerpts from Schambacher=s
deposition, the deposition of Dale Cox (Garland=s
representative), the construction contract between Schambacher and SCC, and the
independent contractor agreement between Garland and SCC, demonstrates that
Schambacher executed a contract with SCC in July 2005 for SCC to construct his
house and that SCC thereafter entered into a contract with Garland in September
2005 for Garland to perform insulation services for SCC.  Cox testified that Garland understood that
SCC was the general contractor for the housing project, that Garland sent its
invoices to SCC, and that Garland never understood the situation to be any
different.  Garland met its summary
judgment burden to show that it had contracted with SCC, not Schambacher, to
perform insulation services on the housing project.








Schambacher
argues that his summary judgment evidence raised a fact issue that he
contracted with Garland to perform insulation services because Garland never
dealt with anyone other than him in regard to the performance of insulation
services on the housing project and because he, not SCC, was responsible for
hiring the subcontractors, overseeing the construction of the house, managing
and communicating with the subcontractors, and paying the subcontractors.
Schambacher directs us to Scott=s
deposition testimony that SCC was only responsible for providing Schambacher
with a list of subcontractors from which he could select and for passing along
invoices to him that it had received from the subcontractors.  Because of his Aarrangement@ with
SCC, Schambacher argues that the construction contract that he entered into
with SCC, which neither R.E.I. nor Garland knew about, did not legally deprive
him of the ability or capacity to contract with R.E.I. and Garland.








Schambacher=s summary
judgment evidence did not raise a genuine fact issue regarding privity with
Garland because, though he may have had an Aarrangement@ with SCC
that limited SCC=s duties as general contractor,
Garland had a written agreement with SCC to perform insulation services.  The independent contractor agreement
expressly provides that A[n]o variation, modification[,]
or changes hereof shall be binding on either party hereto unless set forth in a
document executed by all the parties hereto.@  There is no evidence that Garland varied, modified,
or changed its agreement with SCC to contract instead with Schambacher for
insulation services on the housing project, and there is no evidenceCnor does
Q2Schambacher even argueCthat Garland=s
agreement with SCC somehow excluded Garland=s
insulation services for the housing project. 
The law presumes that a written agreement correctly embodies the parties=
intentions and is an accurate expression of the agreement between the
parties.  Estes v. Republic Nat=l Bank of
Dallas, 462 S.W.2d 273, 275 (Tex. 1970). 
Schambacher=s actions in selecting Garland to
perform insulation services and overseeing the construction of the housing
project did nothing to alter Garland=s
contractual relationship with SCC, which is further evidenced by Garland=s billing
each invoice to ASterling Classic Homes@ and not
to Schambacher.  We hold that the trial
court did not err by granting Garland=s motion
for summary judgment on Schambacher=s claims
for breach of contract and for breach of express and implied warranties.  Accordingly, we overrule Schambacher=s fifth
issue.

C.      R.E.I.








The
summary judgment evidence presented by R.E.I. and Schambacher in regard to
Schambacher=s contract and warranty claims
overlaps with much of the summary judgment evidence presented by Garland and
Schambacher.  There are, however, a few
significant differences.  First, R.E.I.
states that it, Alike all of the other
subcontractors on the [housing] Project, contracted directly with SCC.@  According to R.E.I., if it had contracted
with SCC, then it did not contract with Schambacher to perform the exact same
work.  But unlike Garland, R.E.I. has not
produced any evidence of a written contract between it and SCC for the
performance of services, nor have we located one after searching the entire
record.[3]  We therefore look to evidence of an oral
agreement, which leads to the second significant difference between R.E.I.=s and
Garland=s summary
judgment evidence.

Unlike
Garland=s
representative, who testified that Garland always understood its agreement to
be with SCC, Haugen testified that he Arealized@ that
R.E.I. was not working for SCC after it had received the first payment
for its services on the housing project. 
Haugen testified that the payment came from Schambacher.  After realizing that R.E.I. was not working
for SCC, Haugen Ajust let it go@ instead
of making further inquiries.  At that
time, R.E.I. was 50 percent finished with its work on the housing project.

Another
distinction of R.E.I.=s summary judgment evidence
concerns the invoices.  Garland billed
each invoice to ASterling Classic Homes,@ but
under the ABill To@ section
of a February 27, 2006 R.E.I. invoice, ASterling
Classic Custom Homes@ is crossed out and APaul@ is
written in.








Although
the summary judgment evidence shows that Schambacher entered into the
construction contract with SCC, the contract provides that A[Schambacher]
shall be responsible for any liens and claims of liens for labor and materials
for which [Schambacher] has contracted directly with another party.@  Schambacher testified that he hired R.E.I. to
perform electrical services for the housing project.  In light of this and Schambacher=s and
Scott=s
deposition testimony regarding their Aarrangement,@ we reject
R.E.I.=s
argument that Schambacher=s testimony that SCC was the Ageneral
contractor@ for the housing project in and
of itself forecloses Schambacher=s
contention that he contracted with R.E.I.

Citing Jensen
Construction Co., R.E.I. contends that A[a]bsent
an express agreement otherwise, in construction cases >a
subcontractor is not in privity with the owner.=@  See 920 S.W.2d at 772.  R.E.I. then argues that ASchambacher
produced no evidence of an express agreement between [R.E.I.] and himself that
would create a fact question as to whether he was in privity with [R.E.I.]@  The problem with this argument is that the
facts of this case render the rule delineated by the Jensen court
inapposite.  According to Haugen, R.E.I.
never entered into written contracts with SCC when it contracted with SCC for
the performance of services.  Haugen
testified that its agreements were instead Aall@ oral
agreements.  He also testified that
Schambacher may have been the one who called R.E.I. and informed it that there
was a Arough-in@
available.  Considering that R.E.I.=s
representative testified that R.E.I. has a history of entering into oral
agreements for the performance of services, R.E.I.=s
contention that Schambacher must show evidence of a written contract to
establish privity is completely inconsistent with its own history of
contracting orally with general contractors for jobs.








The
evidence presented in the light most favorable to Schambacher therefore shows,
among other things, that R.E.I. did not have a written contract with SCC to
perform services on the housing project, that Schambacher claimed to have hired
R.E.I. to perform electrical services for the housing project, that Haugen
realized that R.E.I. did not work for SCC after receiving payment from
Schambacher, and that R.E.I. billed at least one invoice to Schambacher.  Indulging every reasonable inference and
resolving any doubts in Schambacher=s favor,
we must conclude and hold that Schambacher=s summary
judgment evidence raised a genuine issue of material fact regarding whether
R.E.I. contractedCand was therefore in privityCwith
Schambacher for the performance of electrical services on the housing
project.  Accordingly, we sustain
Schambacher=s fourth issue.

VI.  Agent

In his
seventh issue, Schambacher argues that if he failed to raise a fact issue
regarding privity with Garland, then he at least raised a fact issue that he
was an agent for SCC in his dealings with Garland and, therefore, that he has a
sufficient interest in the subject matter of the contracts to prosecute a suit
against Garland in his own name.[4]  He cites Perry v. Breland for the
proposition that there are four exceptions to the rule that an agent may not
maintain a suit in his own name based upon his principal=s
contract:  (1) when the agent
contracts in his own name; (2) when the principal is undisclosed;
(3) when the agent is authorized to act as owner of the property; and
(4) when the agent has an interest in the subject matter of the contract.  16 S.W.3d 182, 187 (Tex. App.CEastland
2000, pet. denied).








The
summary judgment evidence conclusively establishes that Garland contracted with
SCC, not Schambacher, to perform insulation services and that SCC was disclosed
as the contracting party with Garland. 
The third and fourth Perry exceptions are factually inapplicable
to this case.  The Perry court
pointed out that A[a]n agent contracting for an
undisclosed principal has the right to sue if it is apparent that the contract
would be enforceable against him if the opposite party sued.@  Id. 
Notwithstanding that SCC was disclosed, Garland=s
contract with SCC would not be enforceable against Schambacher if Garland sued
under the independent contractor agreement. 
See id.  Accordingly,
Schambacher failed to raise a fact issue that he was an agent for SCC in his
dealings with Garland.  We overrule
Schambacher=s seventh issue.

Having
sustained Schambacher=s fourth issue, we need not
address his sixth issue arguing that a fact issue exists that he was an agent
for SCC in regard to his dealings with R.E.I. 
See Tex. R. App. P. 47.1.

VII.  Negligence and Economic Loss

In his
eighth and ninth issues, Schambacher argues that the trial court erred by
granting R.E.I.=s and Garland=s motions
for summary judgment on his negligence claims on the basis of the economic loss
doctrine.








The mere
fact that an act is done pursuant to a contract does not shield it from the
general rules of tort liability.  Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) (reasoning that
a party=s acts
may breach duties in tort or contract alone or simultaneously in both,
depending on the circumstances); Thomson v. Espey Huston & Assocs., Inc.,
899 S.W.2d 415, 420 (Tex. App.CAustin
1995, no pet.).  One who undertakes to
perform a contract assumes a duty to all persons to take reasonable care not to
injure them or their property in the performance of that contract, and one who
is not privy to the contract may assert a claim for negligence for a breach of
that duty.  Goose Creek ISD of
Chambers and Harris Counties, Tex. v. Jarrar=s
Plumbing, Inc., 74 S.W.3d 486, 494 (Tex. App.CTexarkana
2002, pets. denied); see Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493,
494 (Tex. 1991).  The court in Thomson
reasoned that a property owner may assert a claim for negligence against a
subcontractor based on the subcontractor=s
performance under its contract with a general contractor when the cause of
action is independent of the duties imposed by the contract.  Jarrar=s
Plumbing, 74 S.W.3d at 494; Thomson, 899 S.W.2d at 421B22.








A
plaintiff=s negligence action may, however,
be barred by the economic loss doctrine, which has been applied by Texas courts
in two related, overlapping contexts.  Pugh
v. Gen. Terrazzo Supplies, Inc., 243 S.W.3d 84, 90B91 (Tex.
App.CHouston
[1st Dist.] 2007, pet. denied).  The
doctrine has been applied to preclude tort claims brought to recover economic
losses when those losses are the subject matter of a contract.  See Jim Walter Homes, 711 S.W.2d at
618.  When the injury suffered is only
economic loss to the subject of the contract itself, the action sounds in
contract alone.  Id.  The doctrine has also been applied to
preclude tort claims brought to recover economic losses against the
manufacturer or seller of a defective product where the defect damages only the
product and does not cause personal injury or damage to other property.  Pugh, 243 S.W.3d at 91.  The economic loss doctrine does not apply
only to bar claims against those in a direct contractual relationship; it also
applies to preclude tort claims between parties who are not in privity.  Id. at 91 & n.7 (citing Trans-Gulf
Corp. v. Perf. Aircraft Servs., Inc., 82 S.W.3d 691, 695 (Tex. App.CEastland
2002, no pet.) and Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103,
106B07 (Tex.
App.CHouston
[14th Dist.] 2000, no pet.)).

Here,
Schambacher only argues that both R.E.I. and Garland had a common law duty to
perform services under their respective contracts with care, skill, and reasonable
expedience and that their negligent failure to do so gave rise to an action in
tort.  Schambacher=s
argument misses the mark.  His
allegations against R.E.I. and Garland and argument on these issues do not
assert that R.E.I.=s and Garland=s
negligence, if any, in performing the electrical and insulation services for
the housing project caused any injury or damages beyond economic loss to the
subject of R.E.I.=s and Garland=s
respective contracts.  Schambacher=s actions
against R.E.I. and Garland thus sound only in contract.  See Jim Walter Homes, 711 S.W.2d at
618; Pugh, 243 S.W.3d at 93B94.  We hold that the trial court did not err by
granting R.E.I.=s and Garland=s motions
for summary judgment on Schambacher=s
negligence claims, and we overrule Schambacher=s eighth
and ninth issues.








VIII.  Fraud

In its
only issue, R.E.I. argues that the trial court erred by granting Schambacher=s
no-evidence motion for summary judgment on its common law fraud counterclaim
against Schambacher regarding the $77,000 claim for reimbursement that
Schambacher submitted to Assurance based on the fee that he had purportedly
paid to SCC to serve as the general contractor for the housing project.








The
elements of a cause of action for fraud are (1) a material representation
was made; (2) the representation was false; (3) when the
representation was made, the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion; (4) the
speaker made the representation with the intent that the other party should act
upon it; (5) the party acted in reliance on the representation; and
(6) the party suffered injury as a result. 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001); Dewayne
Rogers Logging, Inc. v. Propac Indus., Ltd, 299 S.W.3d 374, 391 (Tex. App.CTyler
2009, pet. filed).  Intent may be
inferred from a party=s actions before and after the
fraudulent conduct and may be established by either direct or circumstantial
evidence.  Spoljaric v. Percival
Tours, Inc., 708 S.W.2d 432, 434B35 (Tex.
1986).  Although circumstantial evidence
may be used to establish any material fact, it must transcend mere suspicion;
there must be a logical bridge between the proffered evidence and the fact.  IKON Office Solutions, Inc. v. Eifert,
125 S.W.3d 113, 124 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied).  Intent
tends to be a fact question uniquely within the realm of the trier of fact
because it so depends on the credibility of witnesses and the weight given
their testimony.  Spoljaric, 708
S.W.2d at 434.

R.E.I.
included the affidavit of Steve Dickens in its response to Schambacher=s motion
for summary judgment.  Dickens is an
adjuster with Assurance and Awas
directly involved in the resolution of the insurance claim filed by
[Schambacher]@ for the fire at the Tealwood
house.  According to Dickens,

3)       Schambacher submitted, along with his property damage claim
arising from the Fire, a claim for reimbursement of a $77,000 fee he had
purportedly paid to SCC Homes to serve as the general contractor in the
construction of the house at the Property (the AFee@).  Assurance paid this claim for reimbursement
of the Fee.

 

4)       It was not until well after the payment of Schambacher=s claim for the Fee, during
the taking of discovery in the Subrogation Action, that Assurance was first
made aware that Schambacher may have not paid the Fee to SCC Homes, or to
anyone else, after all.

 

R.E.I.
also included excerpts from Schambacher=s
deposition in its response to the motion for summary judgment.  Schambacher maintained that he had paid a fee
of $77,037 to SCC for SCC to act as the general contractor on the housing
project.  The following exchange
occurred:

[Counsel]:  I=m going to show you what=s been marked as Exhibit
Number 10.  Let me represent to you that
this is one of the invoices that was produced to me.  Can you identify that invoice?

 

[Schambacher]:  It says, SCC
Homes, contracting fee - 932 Tealwood.

 

[Counsel]:  And is that an
invoice from SCC Homes to yourself?

 

[Schambacher]:  Yes.








[Counsel]:  And what is that
invoice for?

 

[Schambacher]:  For the - - being
the sub- - - or being the contractor.

 

[Counsel]:  How much is the
invoice for?

 

[Schambacher]:  $77,037.

 

[Counsel]:  And explain to me
what you mean it was for Abeing the contractor.@

 

[Schambacher]:  SCC was the
general contractor on the house.

 

[Counsel]:  This was the fee that
you paid to SCC for acting as general contractor?

 

[Schambacher]:  Correct.

 

[Counsel]: . . . When we talked about earlier that - - what you
retained SCC to do was simply to provide a list of subcontractors and handle
the invoicing for you; is that correct?

 

[Schambacher]:  Correct.

 

. . . .

 

[Counsel]:  And so the $77,000,
what you=re telling me, that was
your fee to them for providing you with these lists of subcontractors and
handling the invoicing?

 

[Schambacher]:  Yes.

Schambacher testified that he had
provided the invoices to Continental Adjusters to organize and sort and that
they were ultimately submitted to Assurance.








R.E.I.
also included excerpts from Scott=s
deposition in its response to Schambacher=s motion
for summary judgment.  Scott testified
that he had never seen the $77,037 invoice and that, as far as he knew, SCC had
never been paid the $77,037.  The
following exchange occurred:

[Counsel]:  Can you explain what
this contracting fee invoiced from SCC Homes is?

 

. . . .

 

[Counsel]:  What is the basis of
this invoice?

 

[Scott]:  My understanding of my
- - the fee that was supposed to be paid to us, which as far as I know we never
received anything, was going to be based off of, you know, time involved . . .
.

 

. . . .

 

[Scott]:  This is the first time
I=ve seen an invoice for
that.

 

. . . .

 

[Counsel]:  Do you know whether
or not the company ever received $77,000 from your brother?

 

[Scott]:  As far as I know, we=ve never received a
dollar.

 

. . . .

 

[Counsel]:  Are you prepared to
disagree with your brother=s representation that he and Susan Schambacher
paid your company SCC $77,037?

 

[Scott]:  As far as I know, I=ve never received any
money.

 








We hold
that R.E.I. presented summary judgment evidence raising genuine issues of
material facts that Schambacher made a material, false representation to
Assurance that he had paid SCC a fee of $77,037; that he knew the
representation was false when made; that he made the representation with the
intent that Assurance act upon it; that Assurance acted in reliance on the
representation by paying the claim for reimbursement of the $77,037 fee; and
that R.E.I., to whom Assurance had assigned its claims, suffered injury as a
result of the representation.  See
FirstMerit, 52 S.W.3d at 758; Spoljaric, 708 S.W.2d at 434B35.  We sustain R.E.I.=s sole
issue.

IX.  Conclusion

We affirm
in part and reverse and remand in part. 
Having sustained R.E.I.=s only
issue, we reverse that portion of the trial court=s
judgment granting Schambacher=s
no-evidence motion for summary judgment on R.E.I.=s fraud
counterclaim.  Having sustained
Schambacher=s fourth issue, we reverse that
portion of the trial court=s
judgment granting R.E.I.=s motion for summary judgment on
Schambacher=s claims against R.E.I. for
breach of contract and for breach of implied and express warranties.  We remand this case for further proceedings
concerning those claims as well as R.E.I.=s fraud
counterclaim.  Having overruled all of
Schambacher=s other issues, we affirm the
remainder of the trial court=s
judgment.

 

BILL MEIER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER
and MEIER, JJ.

 

DELIVERED:  August 5, 2010











[1]See Tex. R. App. P. 47.4.





[2]Schambacher raises no
issue in these appeals regarding the DTPA claims.





[3]Schambacher=s statement during his
deposition that he thought the subcontractors had their agreements with SCC
does no more than create mere surmise or suspicion of the fact.  See Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983).





[4]Schambacher raised this
argument in his response to Garland=s motion for summary judgment.